UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LEVI T.,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

CASE NO. 3:18-cv-05132 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Magistrate Judge Rule MJR 13. *See also* Consent Filed by Plaintiff To Proceed Before a Magistrate Judge, Dkt 2. This matter has been fully briefed. *See* Dkt. 18, 19, 20.

An examining psychologist and a treating nurse practitioner diagnosed plaintiff with longstanding mental conditions including posttraumatic stress disorder ("PTSD") caused by plaintiff's military service. The ALJ disregarded these opinions, instead crediting the opinion of

an agency doctor who had never examined plaintiff and who opined that plaintiff suffered, at most, a few moderate limitations.  In doing so, the ALJ provided no specific, legitimate reason to reject the examining doctor's opinion and ignored the nurse practitioner's opinion entirely.  This was error.

The ALJ further erred by finding that plaintiff's testimony about the severity of his symptoms lacked credibility for reasons that were not clear and convincing, such as mischaracterizing plaintiff's testimony about his physical pain and then finding the record inconsistent with the mischaracterized testimony.

Crediting the erroneously discredited evidence as true would result in finding plaintiff disabled.  Thus, after considering the record, this Court concludes that a remand for an award of benefits is appropriate.

FACTS

In February 2013, plaintiff applied for disability insurance benefits under 42 U.S.C. § 423 (Title II) of the Social Security Act and alleged disability beginning in December 2007, when plaintiff was 25.  *See* AR. 13, 43.  Plaintiff's highest level of education was high school, which he did not complete.  *See* AR. 268.  He served in the military from 2001 to 2007, and his most recent job was working as a forklift driver in 2007.  AR. 44–45, 268.  Plaintiff alleged that he could no longer work because of PTSD, panic attacks, depression, and anxiety.  *See* AR. 267.  The Administration denied his application initially and following reconsideration.  AR. 13.

In August 2017, Administrative Law Judge David Johnson ("the ALJ") found that plaintiff's date last insured was December 31, 2012 and that he was not disabled during the relevant period.  *See* AR. 13, 25.  At step 2, the ALJ found that plaintiff had at least the severe

impairments of PTSD, depression, anxiety disorder, headaches, polyarthralgia, and a history of substance abuse. AR. 16.

The Appeals Council denied plaintiff's request for review. AR. 1. Plaintiff then filed a complaint for judicial review of the ALJ's decision in this Court. *See* Dkt. 4.

## DISCUSSION

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence, plaintiff's credibility, and the lay evidence. Dkt. 18, at 2. Plaintiff further argues that the ALJ erred by failing to properly assess plaintiff's RFC and to take testimony from a medical advisor. Dkt. 18, at 2.

**I. Legal Principles**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**II. Dr. Carter**

*A. Dr. Carter's Opinion*

In 2017, Frances Carter, Ph.D., conducted a consultative examination of plaintiff and diagnosed him with PTSD and generalized anxiety disorder. AR. 690. Dr. Carter reviewed a letter from plaintiff's therapist in 2010 and a variety of mental health records from after the relevant period. AR. 686. She also interviewed plaintiff and conducted a mental status examination. *See* AR. 685, 688.

1    Dr. Carter opined that plaintiff had generally mild impairments to his abilities to reason,
2    remember, and concentrate; however, she found that his abilities to understand, remember, carry
3    out, and make judgments related to complex instructions were moderately to markedly impaired.
4    AR. 682, 691. "[A]s measured by the tasks of this evaluation," his insight and judgment were
5    mildly to moderately impaired. AR. 691. She assessed severe impairments to plaintiff's
6    capacities for abstract thought and his abilities to interact with others, to maintain regular
7    attendance in a workplace, to complete a normal work day or week without interruption, and to
8    deal with usual workplace stress, particularly in the presence of others. AR. 691; *see* AR. 683.
9    He had "relatively limited adaptive skills" and was "quite environmentally reactive." AR. 691.

10    Dr. Thomas Clifford, a State agency reviewer who did not examine plaintiff, disagreed
11    with nearly all of Dr. Carter's assessed limitations, except for Dr. Carter's opinion that plaintiff
12    could understand and remember simple instructions and was only moderately limited in his
13    ability to carry out complex instructions. *Compare* AR. 121 *with* AR. 682, 686. Because Dr.
14    Clifford's opinion essentially contradicted Dr. Carter's opinion, this Court reviews the ALJ's
15    decision to discredit Dr. Carter's opinion to determine whether the ALJ provided specific and
16    legitimate reasons that were supported by substantial evidence in the record. *See Lester v.
17    Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

18    The ALJ gave only "[l]ittle weight" to Dr. Carter's opinion because it was from over four
19    years after plaintiff's date last insured; because much of it derived from plaintiff's self-reports,
20    which the ALJ found to be not reliable; and because the only evidence that Dr. Carter reviewed
21    from the period at issue was a 2010 letter from plaintiff's therapist, to which the ALJ had also
22    given "little weight[.]" AR. 24; *see* AR. 23.

*B. After-the-Fact Opinion*

Regarding the first reason that the ALJ gave, plaintiff points out that Dr. Carter assessed limitations based on conditions that plaintiff had suffered since at least 2005, when he served in the military. Dkt. 18, at 6. The Ninth Circuit "has specifically held that 'medical evaluations made after the expiration of a [plaintiff's] insured status are relevant to an evaluation of the preexpiration condition.'" *Lester*, 81 F.3d at 832 (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). Indeed, in *Lester*, the Ninth Circuit expressly disapproved of defendant's primary authority for the idea that standing alone, the fact that an opinion was rendered after the relevant period is a valid reason to reject that opinion. *See id.* at 832 n.10 (citing *Vincent v. Heckler*, 739 F.3d 1393 (9th Cir. 1984)) ("*Vincent* . . . does not stand for the proposition that the Commissioner is entitled to reject the treating or examining psychologist's opinion, merely because the onset date of disability was before the first date on which the psychologist saw the [plaintiff]."); Dkt. 19, at 8.

Contrary to the ALJ's finding that Dr. Carter's opinion did not reflect plaintiff's pre-2012 limitations, Dr. Carter diagnosed active symptoms of PTSD and mood disorder, stating that these symptoms originated as early as 2003, based on plaintiff's military service beginning at that time, including a year that plaintiff spent in active combat zones. AR. 683, 688; *see* AR. 24. Plaintiff reported to Dr. Carter that the violence and trauma he was exposed to during his military service caused him to suffer daily symptoms ever since. AR. 686.

Dr. Carter's report clearly assessed plaintiff as having longstanding symptoms of PTSD and anxiety that had originated during his military service, before the relevant period. Substantial evidence thus does not support the ALJ's characterization of Dr. Carter's opinion as "not reflect[ing] the [plaintiff's] functioning or limitations prior to 2012." AR. 24. Because the

ALJ improperly found that Dr. Carter's opinion did not pertain to limitations during the period at issue, this was not a legitimate reason to reject her opinion.

*C. Based on Plaintiff's Self-Reports*

Regarding the ALJ's rationale that "much of" the basis for Dr. Carter's opinions was plaintiff's self-reports (AR. 24), a provider's opinion may be discounted on the basis that it was based to a large extent on an applicant's self-reports and not on clinical evidence, where the ALJ properly finds the applicant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). However, an ALJ improperly discounts an opinion where substantial evidence does not support such a conclusion. *Id.*

Substantial evidence does not support a finding that Dr. Carter's opinion primarily relied on plaintiff's reports because Dr. Carter amply supported her opinion with her own observations, including mental status examination results. Dr. Carter's opinion discussed plaintiff's report of his complaints, namely his self-reported nightmares, daily panic attacks, flashbacks, intense anxiety, feeling of not being safe, chronic lack of energy, and hopelessness. AR. 685. This Court notes that of these symptoms, many by their very nature could not be "observed"—such as flashbacks and feelings of anxiety—so that Dr. Carter necessarily had to rely on plaintiff's self-report. Symptoms should not be discredited merely because they are not amenable to objective corroboration. Additionally, Dr. Carter observed that plaintiff's attitude and general behavior included "no specific indication of malingering or factitious behavior." AR. 688–89.

The rest of Dr. Carter's opinion goes beyond simply relying on plaintiff's self-reports. Dr. Carter conducted a mental status examination and recorded the results, including that plaintiff's appearance included "evidence of mild psychomotor agitation and notable hypervigilance, with two instances of elevated startle response following exposure to sounds";

that he demonstrated "increased agitation following hyperreactive response"; and that his "[o]bserved mood and affect are anxious and hypervigilant[.]" AR. 688–89. Dr. Carter stated that her observations corroborated plaintiff's report of his complaints, including hypervigilance, anxiety, and agitation. *See* AR. 688–89. She also observed irregularities in plaintiff's speech and the result of an abstract thinking exercise and a delay in plaintiff's response to a remote memory exercise. AR. 689. By dismissing Dr. Carter's opinion with the conclusory finding that "much of" it derived from plaintiff's self-reports, the ALJ failed to properly account for these observations that Dr. Carter made during her mental status examination—a significant error because the results of such examinations reflect the objective findings of trained mental health professionals, who observe patients for signs of their mental health not rendered obvious by their subjective reports. *See* Paula T. Trzepacz & Robert W. Baker, *The Psychiatric Mental Status Examination* 4 (Oxford University Press 1993).

      Neither did Dr. Carter base her functional assessment on plaintiff' self-reports alone; rather, she specifically relied on the mental status examination results. *See* AR. 691. She used those results as the basis for her opinions that plaintiff's memory, concentration, and persistence had some deficits; that his capacity for abstract thought was severely impaired; and that his insight and judgment were mildly to moderately impaired. AR. 691. She also linked her assessment of limitations to plaintiff's ability to interact with others and respond to changes in a routine setting to her observations of plaintiff's anxiety, hypervigilance, elevated startle response, and hyper-reactivity to sounds. AR. 683. Substantial evidence does not support a finding that Dr. Carter's opinion primarily relied upon plaintiff's self-reports where Dr. Carter based her functional assessment on her observations of plaintiff.

*D. Therapist's Letter*

The remaining reason that the ALJ provided for rejecting Dr. Carter's opinion was that the only evidence that she reviewed from the relevant period was a letter from plaintiff's therapist in 2010, to which the ALJ had already accorded little weight. AR. 24. But, as discussed above, this reasoning fails to take into account that Dr. Carter's limitations were based on her diagnosis that plaintiff's PTSD and anxiety disorder were longstanding, including throughout the relevant period. This reasoning also fails to take into account that Dr. Carter supported her opinion with her own observations. Thus, this remaining reason was not a legitimate reason to reject Dr. Carter's opinion.

**III. Ms. Pichette**

In 2015, Elaine Pichette, a nurse practitioner who treated plaintiff (AR. 656), opined that plaintiff "remain[ed] moderately to severely impaired both mentally and physically and [was] unable to return to the workforce" following plaintiff's office visit. AR. 675. In plaintiff's first visit with Ms. Pichette, also in 2015, she noted that plaintiff complained of longstanding social anxiety, panic attacks, and physical pain caused by injury in a war zone. AR. 678. Ms. Pichette's medical chart for plaintiff includes that he "is disabled [from] PTSD and injuries received while on active duty in the National Guard." AR. 656.

The ALJ did not discuss Ms. Pichette's opinions—an omission that plaintiff argues was error. Dkt. 18, at 6. Although an ALJ need not discuss all evidence provided in a case, the ALJ must explain why he chooses to discount "'significant probative evidence.'" *Vincent*, 739 F.2d at 1394–95 (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

Ms. Pichette's opinions were significant and probative because they corroborated Dr. Carter's opinion that plaintiff's mental conditions were longstanding and caused severe

limitations to his work abilities. Although Ms. Pichette was a nurse practitioner—and hence an "other source" witness under federal regulations—the ALJ nevertheless had to provide at least germane reasons to reject her opinions. *See* 20 C.F.R. § 404.1513(d) (2013); *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015). But the ALJ did not provide any reason to reject Ms. Pichette's opinions because the ALJ ignored them.

Defendant argues that the ALJ did not need to address Ms. Pichette's opinions because they were from more than 2 years after the relevant period. Dkt. 19, at 10. But the fact that Ms. Pichette's opinions were after the relevant period does not mean that the ALJ could simply ignore them. *See Lester*, 81 F.3d 832 n.10. In doing so, the ALJ erred.

**IV. Dr. Clifford**

The ALJ gave "[g]reat weight" to only one opinion of record—the opinion of Dr. Clifford, a non-examining doctor who reviewed plaintiff for the Administration. AR. 25. Plaintiff attacks the ALJ's reliance on Dr. Clifford's opinion, pointing out that as a doctor who neither examined nor treated plaintiff, Dr. Clifford's opinion is generally entitled to less weight the opinion of an examining doctor, such as Dr. Carter. *See* Dkt. 18, at 8 & n.4 (citing *Ghanim*, 763 F.3d at 1160).

Defendant argues that there is no authority for "the proposition that an ALJ commits harmful error by giving weight to an opinion." Dkt. 19, at 10. To the contrary, an ALJ may not rely on a non-examining doctor's opinion alone to justify the rejection of an examining doctor's opinion. *Lester*, 81 F.3d at 831. There must be independent substantial evidence in the record to support the non-examining doctor's opinion. *Id.*

The ALJ relied on portions of two of plaintiff's 2009 mental status examination results in support of his decision to give great weight to Dr. Clifford's opinion. *See* AR. 24. Of note,

however, the ALJ ignored that one of these mental status examinations included abnormal results that undermined Dr. Clifford's opinion: the provider noted that plaintiff had slightly decreased psychomotor activity, an anxious and depressed mood, and endorsed auditory and visual hallucinations and suffering from paranoid thoughts. AR. 470. The ALJ erred by cherry picking from these mental status examination results to rely only on those results that supported the non-examining doctor's opinion. Thus, the ALJ failed to provide substantial evidence to support giving great weight to Dr. Clifford's opinion.

### V. Credibility

Plaintiff also argues that the ALJ erred when he evaluated plaintiff's credibility. Dkt. 18, at 9. The ALJ found that plaintiff had medically determinable impairments but did not credit plaintiff's testimony about the severity of his symptoms. *See* AR. 18. Where "an ALJ concludes that a [plaintiff] is not malingering, and that [h]e has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the [plaintiff's] testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

#### A. *Physical Pain*

The ALJ discussed plaintiff's allegations of physical pain throughout his decision, finding that plaintiff's "knee and back pain appear to cause very few if any limitations" after summarizing the medical evidence from the relevant period. AR. 21. The ALJ also referenced plaintiff's activities of performing some physical labor (AR. 21), being paid to build a fence, pushing a car, and helping a friend paint (AR. 22) and found that these activities were inconsistent with plaintiff's allegations of physical pain. Finally, the ALJ noted the lack of

significant abnormalities in 2009 and 2011 imaging of plaintiff's knees and his ability to walk five miles a day until 2012 as inconsistent with plaintiff's testimony about knee pain. AR. 22.

At the outset, the ALJ improperly created an inconsistency by mischaracterizing plaintiff's testimony. *See* AR. 22 ("allegations of great physical limitations"). At his hearing, plaintiff did not allege that he suffered disabling physical pain: rather, he said that it was his mental health symptoms that prevented him from working. *See* AR. 42. Neither did plaintiff claim in his disability application that physical impairments prevented him from working during the relevant period. *See* AR. 267.

Regarding his knee, plaintiff explained that he walked up to 10 miles daily until 2012, when he was in a car accident. AR. 58. After the accident, he "could still walk," but walking no longer felt comfortable because his knee felt like it would "pop[.]" AR. 58–59. He also claimed that his back hurt, causing difficulty sleeping. AR. 58. Plaintiff's testimony supported that he suffered some discomfort and limitation from physical pain but did not amount to a claim that physical pain prevented him from working during the relevant period. Thus, the ALJ's findings that plaintiff's "knee and back pain appear to cause very few if any limitations," that his condition "was not particularly bothersome during" the relevant period, and that he had no significant abnormalities in his knees following imaging in 2009 and 2011 were consistent with plaintiff's hearing testimony and were not clear and convincing reasons to find plaintiff not credible. *See* AR. 21–22.

Moreover, the ALJ mischaracterized the relevant record when he relied on evidence of plaintiff's physical activities. *See* AR. 22. Plaintiff complained of pain when he engaged in these activities, telling providers that he "felt [a] sudden pop" in his rib area while pushing the car (AR. 581) and that he felt "stabbing" back pain that started when he was painting. AR. 647.

His statements that he performed physical labor were reasons that he gave his treatment providers for missing two substance abuse treatment appointments. *See* AR. 443, 450. These records therefore do not support a finding that plaintiff was able to engage in "robust" physical labor without associated pain during the relevant period. *See* AR. 22.

Finally, defendant argues that treatment notes stating that plaintiff's back pain had resolved after 2016 and that plaintiff was able to do yardwork and handyman work are inconsistent with his testimony about physical pain. *See* Dkt. 19, at 3–4. However, the ALJ did not rely on this evidence to support his decision, and this Court may not supply alternative grounds for an ALJ's decision. *See Bray v. Cmm'r*, 554 F.3d 1219, 1225 (9th Cir. 2009).

### B. Improvement with Treatment and Failure To Attend Treatment

The ALJ also stated that plaintiff's mental health symptoms were not as severe as he alleged because they improved with medication, sobriety, and counseling; because he sought "minimal" treatment during the relevant period, seeking care only "when his condition[s] bother[ed] him"; and because he "fail[ed] to attend treatment." AR. 21.

Regarding the first of these reasons, plaintiff testified that even with medication and counseling and after sobriety, he continued to suffer limitations. At the time of the hearing, he identified anxiety around others, "wak[ing] up every morning puking or hacking," paranoid feelings, and panic attacks, even when taking medication and after he had participated in substance abuse treatment. *See* AR. 48–49, 54. When the ALJ asked plaintiff if his more regular treatment in the years preceding the hearing had helped, plaintiff responded that it was "hard to say" and that he felt better only "sometimes." AR. 62. The ALJ's conclusory statement that plaintiff's issues "appeared to improve" is hardly a clear and convincing reason supported by

substantial evidence, where he testified that he continued to suffer significant mental health symptoms even with some improvement from medication, counseling, and sobriety.

As for the minimal treatment rationale, evidence of conservative treatment may be the basis to discount a plaintiff's testimony about an impairment's severity. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). However, even within the ALJ's decision is evidence that during the relevant period, plaintiff sought more than minimal treatment for his conditions: he participated in chemical dependency treatment in 2009 (*see* AR. 19, 436, 492) and attended multiple psychiatric appointments throughout 2009 and 2011, including one where he sought to restart mental health medication and to "get[] [his] life back together" (*see* AR. 20, 383, 400, 419, 435). This is not "minimal" treatment.

The ALJ also found that plaintiff had "multiple no shows for his mental health group counseling" and cited records that plaintiff said he was "busy with other things" and was "worn out" from physical labor as reasons for missing two appointments. *See* AR. 21. On this basis, the ALJ found that plaintiff "did not believe he needed the recommended treatment [and] was busy doing other things." AR. 21. But it is only unexplained or inadequately explained failure to seek or adhere to treatment that is a proper basis to discredit allegations of symptoms' severity. *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). Here, the ALJ focused on two occasions when plaintiff gave reasons unrelated to his mental health symptoms but ignored plaintiff's hearing testimony that having to attend appointments caused him to suffer panic attacks. *See* AR. 55. The record is replete with instances where plaintiff missed appointments and, taking into account plaintiff's testimony that appointments caused him panic attacks, there is no substantial evidence that the missed appointments "suggest[] his symptoms and limitations were not as great as alleged," as the ALJ reasoned. *See* AR. 21.

Further, plaintiff alleged that he suffered from multiple mental conditions that caused symptoms such as an inability to follow through with commitments (AR 48), panic attacks, anxiety around others, self-isolation (AR. 21) and paranoia that people like his family members wanted to kill him. AR. 51. In view of these symptoms, his failure to attend appointments corroborates, rather than undermines, his allegations. The Ninth Circuit's admonishment that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment for the exercise of poor judgment in seeking rehabilitation'" is particularly applicable here. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

*C. Daily Activities*

The ALJ additionally found that plaintiff's activities of building a fence for hire and helping to parent his girlfriend's young son were inconsistent with the asserted severity of his mental symptoms. AR. 21. There are two grounds to find that daily activities are contradictory to plaintiff's testimony: inconsistency with other testimony or showing skills that are transferable to a full-time work setting. *See Orn*, 495 F.3d at 639.

Plaintiff told a provider in 2009 that he enjoyed spending several days building a fence for payment, which caused him to miss treatment. AR. 443. His provider noted that he was "choosing to step-down to weekly continuing care to devote more time to seeking and maintaining employment," although plaintiff continued treatment on a weekly basis. AR. 443. However, without evidence that plaintiff had actually been able to obtain and sustain employment during the relevant period, plaintiff's aspiration to someday return to full-time work is not a convincing reason to discredit his allegations. "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*,

157 F.3d 715, 722 (9th Cir. 1998). And "[o]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." *Lester*, 81 F.3d at 833. Plaintiff's ability to build a fence for a few days in 2009 is not inconsistent with his testimony about having some, non-disabling physical limitations that were exacerbated by a car accident in 2012. *See* AR. 22. Neither does it show that he was able to engage in skills transferable to a full-time work setting. Thus, the ALJ erred when he used plaintiff's building a fence in 2009 as a reason to find plaintiff's allegations not credible.

The ALJ found that plaintiff's explanation to a provider that he "does the best he can with [his girlfriend's son] to help [his girlfriend] with parenting" showed that plaintiff was better able to interact with others than he testified. *See* AR. 22, 620. But plaintiff made this statement as part of an explanation of his challenges dealing with stress and anger and viewed in context, the statement supports plaintiff's testimony about his mental symptoms. *See* AR. 620.

*D. Lack of Evidence of Panic Attacks*

The ALJ found that plaintiff's testimony that he suffered panic attacks approximately once daily by the time of the hearing was not corroborated by the record, which contained "no evidence to that effect[.]" AR. 22. But the lack of objective medical evidence to corroborate a plaintiff's testimony about the extent of symptoms is not enough to reject that testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

Further, the record contains evidence corroborating plaintiff's testimony that he suffered panic attacks. Plaintiff explained that he self-medicated during the relevant period, abusing substances to control his panic attacks. *See* AR. 52. Even so, in 2009, plaintiff twice reported a history of suffering panic attacks, complained of symptoms of panic, and missed an appointment because of a panic attack. AR. 455, 476, 485. He also reported to an emergency room in 2011

complaining of a headache and heart palpitations, consistent with his testimony that he suffered extreme headaches with his panic attacks. AR. 51, 568.

**VI. Not Harmless Error and Remand for an Award of Benefits**

Plaintiff argues that the errors he identified are not harmless. Dkt. 10, at 17. Generally, ALJ errors are harmless only if they are inconsequential to the ultimate nondisability determination. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

Here, the ALJ erroneously found plaintiff's testimony about the severity of his symptoms not credible, ignored Ms. Pichette's opinions that plaintiff's mental conditions were longstanding and disabling, and discredited Dr. Carter's opinion assessing multiple moderate and severe limitation in favor of a non-examining doctor's opinion that plaintiff had at most, a few moderate limitations. These errors were not inconsequential to the ultimate nondisability determination because without these errors, the ALJ would likely have found plaintiff to be disabled.

This Court may remand for an award of benefits, rather than further proceedings, where three conditions are satisfied: the ALJ erred in rejecting evidence, the record has been fully developed and further administrative proceedings would serve no useful purpose, and if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). This rule "preserves efficiency and fairness in a process that can sometimes take years before benefits are awarded to needy claimants[.]" *Id.* at 1021.

As discussed at length, the ALJ failed to provide any legally sufficient reason supported by substantial evidence to reject plaintiff's testimony and the opinions of Dr. Carter and Ms. Pichette, so the first condition is satisfied.

Second, further administrative proceedings would serve no useful purpose. The only opinion that the ALJ gave great weight to was that of a non-examining agency doctor (*see* AR. 25), and the ALJ erred in relying on this opinion because he failed to point to substantial corroborating evidence. The ALJ also provided no clear and convincing reason to discredit plaintiff's testimony about his symptoms' severity. A remand under these circumstances would clarify no relevant factual dispute but would merely serve to allow "the ALJ to have a mulligan[.]" *See Garrison*, 759 F.3d at 1021.

Third, if the improperly discredited evidence were credited as true, it is clear that the ALJ would be required to find plaintiff disabled on remand. Ms. Pichette and Dr. Carter found that plaintiff suffered from longstanding mental conditions dating back to at least his military service, before the relevant period. Ms. Pichette, the nurse practitioner, deemed that plaintiff's conditions prevented him from working—an opinion that the ALJ could validly have accepted and which, credited as true, would result in finding that plaintiff was disabled. *See Reddick*, 157 F.3d at 725 (an ALJ may accept a medical opinion on the ultimate issue of whether a plaintiff is disabled); *see also Garrison*, 759 F.3d at 1022 (crediting as true a nurse practitioner's opinion that plaintiff was disabled).

Dr. Carter, the examining doctor, noted that plaintiff suffered "likely severe" impairment to his ability to complete a normal work day or work week without interruption from symptoms. AR. 691. And the vocational expert opined that if plaintiff were unable to remain on-task for less than 90% of the time, employment would be impossible. *See* AR. 345. Thus, had the ALJ credited Dr. Carter's opinions as true, plaintiff would have been found disabled.

Because all three conditions are satisfied, an award of benefits is appropriate. In view of this resolution, the Court does not reach plaintiff's remaining issues.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED AND REMANDED** for an award of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for the plaintiff, and the case should be closed.

Dated this 9th day of January, 2019.

J. Richard Creatura
United States Magistrate Judge